UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HELPING HAND CAREGIVERS, LTD., <br><br> Plaintiff, <br><br> v. <br><br> DARDEN RESTAURANTS, INC., et al., <br><br> Defendants. | No. 14 CV 10127 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

This is a "junk fax" case brought under the federal Telephone Consumer Protection Act. Plaintiff claims a health consultant and an Italian restaurant chain faxed it an unsolicited advertisement, thereby causing it damage. Plaintiff further claims that it was treated "unfairly," as proscribed by the Illinois Consumer Fraud and Deceptive Business Practices Act.

The restaurant defendant has moved to dismiss the two-count complaint for failure to state a claim. For the following reasons, the motion is granted in-part and denied in-part.

**I.   Legal Standard**

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of

what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted). In reviewing the sufficiency of a complaint, a court accepts the well-pleaded facts as true. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013).

## II. Background

On October 31, 2014, plaintiff, Helping Hand Caregivers, received an unsolicited one-page fax promoting a free seminar offered by Social Wellness—the business name of defendant Mid Wilshire Consulting, Inc. [1] ¶¶ 10, 15, 16; [1-1]. The fax featured the logos of both Social Wellness and Olive Garden, a national restaurant chain. [1-1]. Defendant Darden Restaurants, Inc. owns Olive Garden. [1] ¶ 16.

The invitation stated that "Social Wellness is teaming up with Olive Garden to help jump start your employees towards a healthier lifestyle." [1-1]. It offered a "fun 30-45 minute Wellness Presentation on Stress & Nutrition." *Id*. The fax offered a "complimentary catered lunch from Olive Garden," including "fresh salad, warm breadsticks, and our soup of the day—utensils included." *Id*. Those wishing to participate in the program were instructed to contact only Social Wellness. *Id*. The health company's contact information alone was displayed on the page. *Id*.

On December 17, 2014, plaintiff filed a two-count complaint against Darden, Mid Wilshire, an individual named Brian Kang, and John Does 1-12. [1]. In Count I, plaintiff alleges these defendants collectively violated the Telephone Consumer Protection Act by (1) sending it an advertisement by fax without first obtaining

plaintiff's prior express invitation, (2) not providing a clear and conspicuous opt-out notice, and (3) not indicating it would comply with any opt-out request within 30 days. *Id*. ¶¶ 45–47. In Count II, plaintiff alleges that sending the fax violated the unfairness predicate of the Illinois Consumer Fraud and Deceptive Business Practices Act. *Id*. ¶ 56. Plaintiff claims it was damaged by being forced to incur the cost of defendants' advertising, by losing paper, toner, use of its fax machine, and use of its time. *Id*. ¶¶ 52, 58. Plaintiff seeks to represent a class of at least 39 individuals who also received the fax. *Id*. ¶¶ 26–34.

Darden has moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint for failure to state a claim.

### III. Analysis

#### A. Count I – Telephone Consumer Protection Act

The TCPA prohibits the "use [of] any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement . . . ." 47 U.S.C. § 227(b)(1)(C). The statute defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." *Id*. § 227(a)(5). The Federal Communications Commission has interpreted this statutory definition to include "facsimile messages that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars," because "[i]n many instances, 'free' seminars serve as a pretext to

3

advertise commercial products and services." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 21 FCC Rcd. 3787, 3814 (2006).

While the Seventh Circuit has not yet addressed the issue, the Eleventh Circuit recently held that, in addition to the person who physically sends a fax, "a person whose services are advertised in an unsolicited fax transmission, and on whose behalf the fax is transmitted, may be held liable directly under the TCPA's ban on the sending of junk faxes." *Palm Beach Golf Center-Boca, Inc. v. Sarris*, 781 F.3d 1245, 1254 (11th Cir. 2015). This interpretation is consistent with the statute's text and the FCC's interpretation of it, and I apply the broad meaning of "sender" here. *See id*. at 1256–57; *see also* 47 C.F.R. § 64.1200(f)(10) ("The term sender . . . means the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement.").

Darden says Count I should be dismissed because plaintiff "fails entirely to allege facts demonstrating that Darden was the sender of the fax." [22] at 6. I disagree. First, the complaint alleges several times that "Defendants," which is defined to include Darden, sent the fax to plaintiff. S*ee* [1] ¶¶ 2, 20, 45. Citing *Robinson v. Morgan Stanley*, 2007 WL 2815839, at *11 (N.D. Ill. Sept. 24, 2007), Darden argues that plaintiff had to "separately state each Defendant's alleged participation in sending the facsimile to attach liability to a defendant as a sender." [28] at 3. That case is inapposite, however, because it dealt with the heightened

4

pleading standards of Rule 9(b). Rule 8(a) alone governs this case, and plaintiff's "Defendants" allegation suffices to let Darden know plaintiff claims it sent the fax.

Second, the complaint alleges that "it is not clear whether any entities or persons *other than* Darden, Social Wellness, and Kang actively participated in the transmission of the subject fax advertisements, or benefitted from the transmissions." *Id.* ¶ 12 (emphasis added). In other words, plaintiff alleges that Darden actively participated in, and benefitted from, the fax's transmission.

Third, the face of the fax supports the inference that it was sent by or on behalf of Darden, because it bears the Olive Garden logo, says "Social Wellness is *teaming up with Olive Garden*," says "*We're* bringing healthy back," speaks of "*our* soup of the day," and offers a free lunch from Olive Garden. [1-1] (emphasis added). Darden argues the fax was clearly not sent by Darden because it came from Social Wellness's fax number and directs reservations to be made with Social Wellness and not with Olive Garden. These allegations, however, do not preclude the plausible possibility that the fax was sent on behalf of Darden, albeit by Social Wellness physically.

In sum, under Rule 8(a), plaintiff need not plead the precise details of the alleged relationship between Social Wellness and Olive Garden. The fax and complaint allegations sufficiently support the plausible claim that Olive Garden was a "sender" of the fax in question. 47 C.F.R. § 64.1200(f)(10).[1]

---

[1] Darden points to a cease-and-desist letter it sent to Social Wellness regarding the use of its name and logo. [22] at 8 n. 2. Darden also notes that Kang sent correspondence to plaintiff's counsel stating that Darden and Olive Garden had nothing to do with the fax in this case. [28] at 1-2. These materials are outside the pleadings and may not otherwise be

5

Darden's second reason for dismissing Count I is that the fax in question does not constitute an unsolicited advertisement under the TCPA. More specifically, Darden argues that rather than "promote any goods or services of either Social Wellness or Olive Garden," the fax in question was "merely an invitation to attend an informational session on wellness in the workplace . . . ." [22] at 8. Again, I disagree. The fax in this case can be read as communicating "the commercial availability or quality of" Darden's "property, goods, or services." 47 U.S.C. § 227(a)(5). First, the fax makes plain that Olive Garden has available for sale "fresh salad, warm breadsticks, and [a] soup of the day . . ." [1-1]. Second, a reasonable inference from the fax as a whole is that eating Olive Garden is consistent with "a healthier lifestyle"—after all, it is the food that Social Wellness has "team[ed] up" with to serve during a "Wellness Presentation on Stress & Nutrition." This all speaks to the quality of Darden's goods. And it makes no difference, furthermore, that the fax says nothing about charging for Olive Garden's food—"In many instances, 'free' seminars serve as a pretext to advertise commercial products and services." 21 FCC Rcd. at 3814. It is plausible that an employer attending this "Lunch n' Learn" might respond to what she learns by ordering Olive Garden for her office in an effort to "jump start [her] employees towards a healthier lifestyle." [1-1].

---

considered on a motion under Rule 12(b)(6). To the extent Darden claims plaintiff's counsel is maintaining this suit in bad faith, that is an issue more appropriately addressed under Rule 11.

Darden notes that in several cases cited by plaintiff, in which there are seminars hosted at restaurants, there are "no allegations" of the restaurants being liable. *See Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 2014 WL 7109630 (W.D. Mich. Dec. 12, 2014) (Jeff Ruby's Steakhouse); *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharms., Inc.*, 2015 WL 144728 (D. Conn. Jan. 12, 2015) (McCormick & Schmick). But the mere fact that the plaintiffs in those cases chose not to name the restaurants as defendants in no way supports the argument that a restaurant that has "teamed up" with a company to send faxes, cannot be held liable under the TCPA.

Darden notes a concern raised by the court in *Cin-Q Auto, Inc. v. Buccaneers Limited Partnership*—that concluding that an entity is necessarily a "sender" under the TCPA merely because their goods or services appear as advertised in a fax, would give rise to "sabotage liability." 2014 WL 7224943, at *6 (M.D. Fla. Dec. 17, 2014). In other words, "it would allow a rabid Tampa Bay Buccaneers fan . . . to trigger per se liability for the organization under the TCPA by gratuitously, and without directive from or notice to the organization, promoting season ticket sales via fax." *Id*. But that is not this case. Olive Garden's food does not "merely appear" in the fax in question. Among other things, the fax states that Social Wellness and Olive Garden are "teaming up" and describes the soup of the day as "our[s]." Accordingly, the fax here can reasonably be taken as having been sent on behalf of both Social Wellness and Olive Garden.

To be sure, a rogue person could cause an entity to be sued—and have the case survive a motion to dismiss—by sending a fax he made appear to have been sent by, or on behalf of, the entity. But, to the extent the proof required to clear the air is not contained or referenced in the pleadings, the possibility of a frame up is not a reason to dismiss the case on the pleadings.

On Count I, Darden's motion to dismiss is denied.

**B.     Count II – Illinois Consumer Fraud**

To state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq*.), a plaintiff must allege "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149 (Ill. 2002). Recovery under the Consumer Fraud Act is available for actions that are "unfair as well as deceptive." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (Ill. 2002). Here, plaintiff alleges only that Darden's actions were unfair. [1] ¶¶ 56–57.

To determine whether an accused practice is unfair under the Act, Illinois courts consider "(1) whether the practice offends public policy; (2) whether it is immoral unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson*, 201 Ill. 2d at 417–18 (citing *F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n. 5 (1972)). "All three criteria do not need to be satisfied to support a finding of unfairness," but rather "[a] practice may

be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.*

In this case, the first factor weighs in favor of plaintiff because "there is little dispute that the alleged practice of sending unsolicited fax advertisements offends public policy." *Mussat v. Power Liens, LLC*, 2014 WL 3610991, at *3 (N.D. Ill. July 21, 2014) (collecting cases).

Courts disagree, by contrast, on whether the practice alleged in this case satisfies the second and third *Robinson* prongs. *Compare Mussat*, 2014 WL 3610991 at *3 (finding allegations related to unsolicited fax transmission did not satisfy Consumer Fraud Act's second and third unfairness considerations); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, 2010 WL 276701, at *2–4 (N.D. Ill. Jan. 15, 2010) (same); *G.M. Sign, Inc. v. Stergo*, 681 F.Supp.2d 929, 935–37 (N.D. Ill. 2009) (same); *Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.*, 633 F.Supp.2d 610, 615–17 (N.D. Ill. 2009) (same); *Rossario's Fine Jewelry, Inc. v. Paddock Publ'ns*, 443 F.Supp.2d 976, 978–79 (N.D. Ill. 2006) (same), *with Brodsky v. HumanaDental Ins. Co.*, 2011 WL 529302, at *9 (N.D. Ill. Feb. 8, 2011) (finding allegations related to unsolicited fax transmission satisfied Consumer Fraud Act's pleading requirements); *Green v. Anthony Clark Int'l Ins. Brokers, Ltd.*, 2009 WL 2515594, at *4–5 (N.D. Ill. Aug. 17, 2009) (same); *R. Rudnick & Co. v. G.F. Protection, Inc.*, 2009 WL 112380, at *2 (N.D. Ill. Jan. 15, 2009) (same); *Centerline Equip. Corp. v. Banner Personnel Serv., Inc.*, 545 F.Supp.2d 768, 779–81 (N.D. Ill. 2008) (same).

I am persuaded by the courts that have found these allegations to be insufficient to state an unfairness claim. As relates to the second prong, I agree that "one unsolicited fax does not rise to the level of immoral, unethical, oppressive, or unscrupulous [behavior] as contemplated by the [Act]." *Mussat*, 2014 WL 3610991 at *3.

As for the third prong, plaintiff alleges Darden caused it and the class members to lose "paper, toner, ink, use of their facsimile machines, and use of their valuable time." [1] ¶ 58. Plaintiff acknowledges, correctly, that the one-page fax it received did not cause it "substantial injury." [27] at 13. Plaintiff argues, instead, that the "aggregated injuries to Plaintiff and the putative class" add up to a substantial injury.

The only allegations about the size of the class are that "[o]n information and belief, the Class consists of more than thirty-nine people . . . ." [1] ¶ 29. Forty people receiving a one-page fax does not amount to a "substantial injury." Nor is plaintiff entitled to a reading of its allegations so liberal so as to presume a class size large enough to transform an insubstantial injury into a substantial one. *See also Stonecrafters*, 633 F.Supp.2d at 617 ("[A] thousand people suffering damage in the amount of a couple of pennies . . . only amounts to an aggregate harm of $20. The class would have to consist of 5,000 people before the alleged harm plausibly reaches even $100, although there is no indication that the class would be so large.").

Because two of the three *Robinson* factors cut strongly in Darden's favor, defendants' alleged conduct was not "unfair" under the Consumer Fraud Act, and plaintiff has failed to state a claim.

On Count II, Darden's motion to dismiss is granted.

## IV. Conclusion

Darden Restaurants' motion to dismiss [21] is granted in-part and denied in-part. Count II is dismissed without prejudice. Count I remains pending.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 5/14/15