UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HELPING HAND CAREGIVERS, LTD., <br><br> Plaintiff, <br><br> v. <br><br> DARDEN RESTAURANTS, INC., MID WILSHIRE CONSULTING, INC., BRIAN J. KANG, and GREG M. JONES, <br><br> Defendants. | No. 14 CV 10127 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Helping Hand Caregivers, Ltd., sues defendants Darden Restaurants, Inc., Mid Wilshire Consulting, Inc., Brian Kang, and Greg Jones under the Telephone Consumer Protection Act, 47 U.S.C. § 227, alleging that Mid Wilshire Consulting (through Kang and Jones) sent Helping Hand an unsolicited fax advertisement on behalf of Darden. [36].[1] Darden moves for summary judgment, arguing there is no genuine dispute of material fact that Mid Wilshire Consulting had no authority to send faxes on Darden's behalf. Darden's motion for summary judgment is granted.

I.  Legal Standards

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the

---

[1] Bracketed numbers refer to entries on the district court docket.

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## II.  Background[2]

Mid Wilshire Consulting, Inc., d/b/a Social Wellness (Social Wellness), is owned by Brian Kang, its CEO and sole employee. [83] ¶¶ 3, 7. Greg Jones is an independent contractor for Social Wellness. [83] ¶ 8. Social Wellness sets up "Lunch n' Learn" opportunities for doctors to give wellness presentations at companies; these doctors preorder food for the attendees. [69] at 8, 14; [78] at 6–7. In July 2014, Social Wellness reached out to Darden Restaurants, Inc., the owner of certain Olive Garden trademarks. [83] ¶¶ 2, 11. Jones handled all communications with Darden on behalf of Social Wellness—Kang never communicated with anyone at Darden (except with Darden's counsel after Helping Hand filed this lawsuit). [83] ¶ 10. Jones sent Darden an email through the Olive Garden website, asking Olive Garden to consider a strategic alliance with Social Wellness. [83] ¶¶ 11–12. Jones

---

[2] [83] is Helping Hand's response to Darden's Local Rule 56.1 statement of facts, and [86] is Darden's response to Helping Hand's statement of additional facts. In responding to Darden's statements of fact, in many instances, Helping Hand's denials are argumentative, overbroad (in that they concern only one aspect of a given factual statement), or fail to cite record evidence that properly controverts the factual statement. Many of Helping Hand's statements of additional facts are also overbroad or unsupported by the cited evidence. The purpose of Local Rule 56.1 is to permit the district court to identify at summary judgment which material facts are in dispute. The parties' Rule 56.1 statements and responses are viewed with this principle in mind. Unless otherwise noted, the facts related below are undisputed or are considered undisputed because the responding party did not properly controvert the factual statement as required by local rule.

sought Darden's permission to use the Olive Garden logo to help promote Social Wellness's program. [83] ¶ 20.

Kasha Momot, then Darden's Director of Brand Management, was the first person from Darden to communicate directly with Jones. [83] ¶ 15; [86] ¶ 5. She exchanged emails with Jones and spoke to him once or twice over the phone. [83] ¶ 16; [86] ¶¶ 6, 8, 11–12. Jones also had some communications with Ken Bott, Darden's Director of Commerce Programs and Partnerships. [83] ¶ 14; [83] ¶ 6. A month or two after Jones's initial email, Momot left Darden for other employment. [86] ¶ 15. At this point, Jones had exchanged a few emails and approximately three to five calls with Momot and/or Bott. [83] ¶ 18.

In early September 2014, Jones emailed Bott, looking for Momot. [86] ¶ 18. Jones and Bott communicated a bit more by email (and possibly by phone). [83] ¶ 24; [86] ¶ 18.[3] Jones described Social Wellness's proposed marketing plan, explaining that Social Wellness would conduct email marketing, first testing it out by sending emails to a test group, letting the consumer know where the food was purchased, and seeing if there was any resulting interest to enroll in Social Wellness's program. [83] ¶¶ 22–25. Although Jones sent Darden an example email mock-up using a different company's logo, he never sent Darden a mock-up email using Olive Garden's logo. [83] ¶ 26. Jones also reached out to Bott in mid-October because some doctors had difficulty ordering online from Olive Garden. Bott asked

---

[3] The emails used as exhibits during Jones's deposition represent every email between Jones and Darden. [83] ¶ 19; *see* [69] at 40–64, [70]–[77].

3

another Darden employee, Roberto Sanchez, to help Jones out with the online ordering process. Sanchez sent Jones an "Online Ordering Guide" and spoke with him over the phone. [86] ¶¶ 21–24.

Around this time, Social Wellness created a fax flyer for its Lunch n' Learn program. Kang and Jones found someone on Craigslist to create the flyer using Photoshop. [83] ¶¶ 49–50. The flyer included the Olive Garden logo in the upper right corner, stated that Social Wellness was teaming up with Olive Garden for a "Lunch n' Learn," which included a complimentary catered lunch from Olive Garden, and the bottom of the flyer included a photo of food. [78] at 39. Kang and Jones obtained both the Olive Garden logo and food photo (which may or may not have been a photo of Olive Garden's food) through Google searches and/or an online company selling photos. [83] ¶¶ 51–52. The contact information in the flyer, including email and phone number, belonged to Social Wellness. [83] ¶ 53. Social Wellness then faxed the flyer out to fax numbers gathered from a Google search and from buying "a list off of Craigslist from some lady." [83] ¶¶ 54–55.

Bott, however, never saw the flyer until this litigation. [83] ¶ 46. During the several months of discussions with Darden, the only specific advertising medium that Jones discussed was email marketing—Jones admits that they never discussed sending faxes. [83] ¶¶ 21, 27, 35. Darden generally does not market by fax, and before entering into a partnership, Darden's practice is to require senior management sign-off and written agreements, including a nondisclosure agreement, and a master services agreement and statement of work outlining logo usage and

4

business expectations. [83] ¶¶ 29–34. Social Wellness never entered into a contract with Darden, and the two companies never paid each other any money. [83] ¶¶ 38–44. Bott says that he and Darden never gave Social Wellness permission to use the Olive Garden logo or to send faxes, but Jones says that Bott told him Darden had "no problem with your telling your companies where the food is coming from" and that this meant Social Wellness had permission to use the Olive Garden name or logo in Social Wellness's marketing materials. [83] ¶¶ 47–48.

Helping Hand Caregivers, Ltd. (an Illinois corporation that voluntarily dissolved in October 2015) alleges that it received Social Wellness's faxed flyer on October 31, 2014. [83] ¶¶ 1, 49. Helping Hand filed suit against Darden, Social Wellness, Kang, and Jones on December 17, 2014. [1]. Darden was served two days later. [83] ¶ 57. By early January, Darden sent Kang and Social Wellness a cease-and-desist letter demanding that they stop using Darden's Olive Garden trademark. [83] ¶ 58. In response, Social Wellness sent an email to Darden's counsel that stated:

> To Whom It May Concern,
>
> Hi, my name is Brian Kang and I am one of the representatives with The Social Wellness Group / Mid Wilshire Consulting. This letter is to inform you that Dardens Restaurants & Olive Garden had nothing to do with the message that was sent to Helping Hands Caregivers LTD. It was totally on the Social Wellness Group just trying to offer a free lecture on health and wellness.

[83] ¶ 59.

That did not end matters between Darden and Social Wellness. Darden sued Social Wellness and Kang for trademark infringement, alleging that Social

5

Wellness had continued to use the Olive Garden trademarks in faxes sent to third-parties. *See Darden Concepts, Inc. v. Mid Wilshire Consulting, Inc. et al.*, Case No. 15-cv-05716, (N.D. Ill. June 26, 2015), [1]. I granted Darden's motion for preliminary injunction, prohibited Social Wellness from using the Olive Garden trademarks, and required suspension of Social Wellness's website until the Olive Garden trademarks were removed. *Darden Concepts*, Case No. 15-cv-05716, [15]. Although Social Wellness and Kang were served with Darden's complaint, they failed to answer or appear. A default judgment and permanent injunction order were entered in October 2015. *Darden Concepts*, Case No. 15-cv-05716, [24]. The order found that, by default, Social Wellness and Kang admitted the relevant facts in Darden's complaint, including willful infringement of the Olive Garden trademarks. Social Wellness and Kang were permanently enjoined from using the Olive Garden trademarks or suggesting any affiliation with Olive Garden.[4]

In Helping Hand's current TCPA action, defendants Social Wellness, Kang, and Jones have never appeared, and Helping Hand has repeatedly declined to pursue default judgment against them. *See, e.g.,* [83] ¶ 6. Instead, Helping Hand largely focused its discovery efforts on Darden. I authorized the deposition of Mr. Bott, but—to avoid conducting depositions without all parties in the case—I stayed further depositions of Darden employees until Helping Hand came forward with a

---

[4] Social Wellness has been sued by other companies for trademark infringement. [83] ¶ 75. For example, default judgment was entered against Social Wellness for infringing SUBWAY trademarks. *See* [83] ¶¶ 75–76, 78–79; *Doctor's Assocs. Inc., v. Brian Kang et al.*, Civil Action No. 3:13-cv-1679-RNC (D. Conn. March 25, 2015), [25].

plan to either bring the remaining defendants into the case or to pursue a default judgment. Helping Hand eventually deposed Kang and Jones (who still have not appeared to defend this lawsuit). After the depositions, Helping Hand indicated that it still had no plan for either bringing the non-appearing defendants into the case or for moving for default judgment against them. I declined to lift the stay on Darden depositions until all defendants were in the case. Darden then moved for summary judgment. [66]. Helping Hand responded with a motion under Federal Rule of Civil Procedure 56(d), [80], requesting the stay be lifted and that Helping Hand be allowed to depose Momot and Sanchez. The Rule 56(d) motion was denied because Helping Hand failed to explain how either deposition would add missing information about Social Wellness's agency status that was unavailable from Jones, Kang, or Bott. [82]. Helping Hand and Darden then completed briefing the summary judgment motion.[5]

### III. Analysis

Under the TCPA, it is illegal to send an unsolicited fax advertisement unless (1) the sender and recipient have an established business relationship, (2) the recipient voluntarily made its fax number available through specified means, or (3) the fax ad contained a statutorily compliant notice. 47 U.S.C. § 227(b)(1)(C). The fax sender is defined as either the person "on whose behalf" the unsolicited ad is sent or the person whose services are promoted in the ad. 47 C.F.R. § 64.1200(f)(10). In

---

[5] Helping Hand denies many of Darden's Local Rule 56.1 statements by stating (without explanation) that testimony from Momot and Sanchez, if obtained, would contradict the evidentiary record. *See, e.g.,* [83] ¶ 10. But these assertions are speculative and do not properly controvert Darden's factual statements. *See* LR 56.1(b).

applying the regulatory definition of a fax sender, the Seventh Circuit has rejected strict liability because it would lead to absurd results—instead, "agency rules are properly applied to determine whether an action is done 'on behalf' of a principal." *Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 938 (7th Cir. 2016). Therefore, to establish Darden's liability for the unsolicited faxes, Helping Hand would have to show that Social Wellness was acting as Darden's agent—i.e., that Social Wellness had express actual authority, implied actual authority, or apparent authority from Darden to send faxes on its behalf. *See id.* at 938–39.

There is no genuine dispute of material fact that Darden did not confer actual authority on Social Wellness to send faxes on its behalf. For agency through express authority, a Darden representative with authority must have directly spoken or written to Social Wellness, telling Social Wellness to send fax flyers its behalf. *See Bridgeview*, 816 F.3d at 939. For implied authority—which is simply actual authority proved through circumstantial evidence, *Moriarty v. Glueckert Funeral Home, Ltd.*, 155 F.3d 859, 866 (7th Cir. 1998)—Helping Hand would have to point to evidence supporting an inference that Social Wellness had authority to send faxes on Darden's behalf. *Bridgeview*, 816 F.3d at 939. Helping Hand argues that Darden allowed Social Wellness to test email marketing and gave Social Wellness permission to use the Olive Garden logo in marketing materials. Even if true, however, that evidence would at most raise a factual issue regarding Social Wellness's use of the Olive Garden logo in email marketing. But this case is about unsolicited fax advertisements, and Helping Hand admits that Jones—the only

8

person at Social Wellness in communication with Darden—never discussed fax marketing with Darden, only email marketing. *See* [83] ¶ 35 ("Plaintiff admits that Jones testified that the only specific advertising medium he discussed during the several months of discussion with Darden was email marketing."). Darden's troubleshooting of Social Wellness's use of Olive Garden's online ordering system is also insufficient to support an inference that Darden gave Social Wellness authority to send fax marketing. On this evidentiary record, Helping Hand cannot establish that Darden gave Social Wellness authority to send faxes on its behalf. *See, e.g., Bridgeview*, 816 F.3d at 939 (although defendant gave authority for fax marketing to local businesses, that authority did not extend to sending thousands of faxes to states where the defendant did not do business).

The evidentiary record also lacks any evidence to raise a genuine issue of fact about apparent authority. To create apparent authority, the principal must speak, write, or otherwise act toward a third party. The principal's conduct must make the third party reasonably believe that the principal has consented to an action done on its behalf by the purported agent. *Bridgeview*, 816 F.3d at 939. In this case, to create apparent authority, Darden must have taken steps toward Helping Hand that led Helping Hand to believe that Social Wellness had authority to send faxes on Darden's behalf. But Helping Hand has failed to point to anything in the record to show that Darden ever interacted with Helping Hand. The fax-ad itself is insufficient to imply apparent authority, especially since Darden was unaware of it.

9

*See id*. (no apparent authority where the fax-ad at issue was the only way defendant could have communicated with recipients).

Helping Hand argues that *Bridgeview* and *Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 825 F.3d 793, 798 (7th Cir. 2016)—which reaffirms *Bridgeview*'s application of agency rules to TCPA fax senders—are inapplicable because both cases were resolved at trial, not summary judgment. But if Helping Hand were allowed to proceed to trial on this evidentiary record, no reasonable jury could return a verdict that Social Wellness had authority to send faxes on Darden's behalf. Helping Hand also asks the court to overrule *Bridgeview* and *Wagener*, and to instead follow contrary authority from the Sixth and Eleventh Circuits. *See Siding & Insulation Co. v. Alco Vending, Inc.*, 822 F.3d 886, 895–96 (6th Cir. 2016); *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245 (11th Cir. 2015). But this court has no authority (or inclination) to overrule Seventh Circuit precedent.

Finally, Helping Hand contends that it was prevented from establishing a full evidentiary record without the depositions of Momot and Sanchez. But in support, Helping Hand merely argues that Momot and Sanchez would corroborate Jones's testimony. *See* [85] at 7. Given Jones's clear admission that he never discussed fax marketing with anyone at Darden, there is no reason to believe that either deposition would have revealed any additional information relevant to the dispositive agency issue here.

## IV. Conclusion

Darden's motion for summary judgment, [66], is granted. A status hearing is set for January 10, 2017, at 9:30 a.m.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 12/21/2016